## MARTHA LONG V. THE STATE.

No. 21067. Delivered May 22, 1940.
Rehearing Denied (Without Written Opinion) June 26, 1940.

The opinion states the case.

*H. S. Beard,* of Waco, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, Judge.

The offense is theft from the person; the punishment, confinement in the penitentiary for three years.

A. H. Kramer owned some rent houses in the City of Victoria, which were generally rented to negroes. Julius Williams and a woman by the name of Zella Hobbs lived in one of these houses. On the occasion of the alleged theft Mr. Kramer had collected $19.70 from one of his renters. According to his testimony, he received from this renter a 10-dollar bill, a 5-dollar bill, four 1-dollar bills, and 70 cents in silver. He placed the silver on one side of his purse and put the currency on the other side, after which he put the purse in his "left hand pants pocket." As he was leaving the house he saw appellant on the porch of another house. According to his testimony, she winked at him, and he asked her if she wanted to rent one of his houses. She replied, "I want to see you about one of the houses. Come in." She insisted that he come into the house. After entering the house he observed two other women there. Appellant then made an effort to persuade him to have sexual relations with her. He testified: "She kept fooling around and finally I shoved her and backed out of the door and got on the gallery and come away." After leaving the house he found that $19.00 had been taken from his pocket book. He did not know when it had been taken, but knew that he had it in his possession when he entered the room with appellant. The money taken from his purse consisted of a 10-dollar bill, a 5-dollar bill, and four dollars in currency.

Zella Hobbs, a witness for the State, testified in part as follows: "I know Mr. Kramer who owns the house. I recollect one day last August when he was out there collecting rent. With reference to whether I saw him collecting any rent from this Martinez, this Mexican, well, I did not see him collecting any rent, but he was there that day. I saw him over there. Martha Long (appellant) was at my house that evening. * * * While I and Martha were there Mr. Kramer came over to the house." The witness testified, further, that she heard a noise in a room. She said: "I knew somebody was with her (referring to appellant) because I heard tumbling in the room.

* * * I heard her and looked in the room and I said, 'Oh, that is my rent man.' So, well, then I came back and started ironing again. Before Martha came in Mr. Kramer said something in the room. * * * I heard Mr. Kramer say 'I don't want to go to bed.' * * * He said he had a bad cold. He did not want to go to bed. Finally Martha came in where I was ironing. She said 'Oh, I done rolled him,' and I said, 'Oh' and she wanted to give the money to me and I would not take it. She told me, 'I done rolled him' and she wanted to give it to me but I did not take it. There was $10 and $5 and $4, like $1 bills, and she tried to give it to me. I said, 'No, I am not going to take it. That is Mr. Kramer's money'."

Julius Williams, a witness for the State, testified that he saw Mr. Kramer go to the house in question on the occasion of the alleged theft. Again, he testified that he heard appellant tell Mr. Kramer something when he entered the house, but did not understand it, and that later he heard a noise in a room. Further, he testified that he saw Mr. Kramer when he left the house. Again, it was his version that appellant came to him with the statement that she had taken some money from a man, and wanted the witness to take some of it. She tendered $19 to the witness.

A deputy sheriff testified that he arrested Julius Williams and found him in possession of $19, consisting of a 10-dollar bill, a 5-dollar bill and four 1-dollar bills.

Testifying in her own behalf, appellant admitted that Mr. Kramer had been in the house in question, but denied that she had taken his money.

Appellant excepted to the charge of the court for its failure to embrace an instruction covering the law of circumstantial evidence. We think the court was warranted in declining to respond to the exception. Immediately after leaving the room, in which she had been with Mr. Kramer, appellant stated to one of the witnesses that she had "rolled him." According to the witness, appellant offered her some of the money. She declined to take the money and told appellant that it belonged to Mr. Kramer. The money appellant offered to give the witness consisted of a 10-dollar bill, a 5-dollar bill and four 1-dollar bills. The injured party had lost money in corresponding demoninations. In 6 Words and Phrases, 3rd Series, 879, it is said: "It is commonly understood in police circles that 'to roll' means to rob." Lasecki v. State, 208 N. W. 868, is cited in support of the text.

The judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.